MURIEL SHELDON *vs.* MILLARD H. BENNETT & another.

DORIS E. BENNETT *vs.* SAME.

GORDON DAVIN *vs.* SAME.

Hampden.    November 15, 1932. — February 24, 1933.

Present: RUGG, C.J., CROSBY, PIERCE, & FIELD, JJ.

*Insurance,* Motor vehicle liability.    *Conflict of Laws.*

A policy of "compulsory" motor vehicle liability insurance issued in this Commonwealth in 1929 was indorsed so as to provide "extra-territorial" coverage to the insured and to any one operating the motor vehicle in question with his permission. Such coverage was subject to the conditions that the insured should give the insurance company prompt notice of any accident and of any resulting claim and should render to the company all possible coöperation. The indorsement further provided that if any of the provisions thereof "are at variance with any specific statutory provisions in force in any State . . . within which coverage is granted, such specific statutory provisions shall supersede any . . . [provision of the indorsement] inconsistent therewith." After an accident occurring in New Hampshire while the motor vehicle was being operated by a son of the insured with his permission, the son and the insured failed to comply with the conditions of the indorsement as to notice and coöperation; and a person injured in the accident recovered judgment against the son. The laws of New Hampshire did not make the right to operate a motor vehicle therein conditional upon the existence of a policy of motor vehicle insurance, but provided in substance that, after the

occurrence of an accident, a court might order the filing of a certificate of the existence of such a policy or the furnishing of other security for the payment of damages, and that the registration of the automobile in that State and the license to operate it therein should be suspended if there were not compliance with such order. Further provisions of such laws were that such a judgment creditor, "if the judgment debtor was, at the accrual of the cause of action, insured against liability therefor under a motor vehicle liability policy," "shall be entitled to have the insurance money applied to the satisfaction of the judgment"; and that such a policy should be subject to the provision, among others, that ". . . no violation of the terms of the policy, shall operate to defeat or avoid the policy so as to bar recovery within the limit provided in the policy." In a suit in equity by the judgment creditor against the judgment debtor and the insurance company under G. L. (Ter. Ed.) c. 214, § 3 (10), it was *held*, that

(1) The New Hampshire statute was not to be construed as establishing the policy of that State that no motor vehicle liability policy should be applicable therein except a policy such as was specified by its laws: said statute was applicable only to "compulsory" policies issued in that State;

(2) It could not properly be contended that the insurance company intended to give the persons insured by the indorsement the same coverage in New Hampshire as that which they would have had if the accident had occurred on a way of this Commonwealth where the "compulsory" provisions of the policy were applicable;

(3) The provisions of the indorsement as to notice and coöperation were not inconsistent with nor superseded by the terms of the New Hampshire statute, and they remained in full force;

(4) There having been a breach of such provisions by the persons insured, the judgment creditor, who had no greater rights under the "extraterritorial" coverage than those of the persons insured, could not maintain the suit.

THREE BILLS IN EQUITY, filed in the Superior Court on October 5, 1931, described in the opinion, against Millard H. Bennett and Liberty Mutual Insurance Company.

The suits were heard by *Lummus*, J. The judge found as follows:

"The plaintiffs rely upon the New Hampshire Laws of 1927, c. 54. By that statute, which was in force at the time of the accident, the right to operate an automobile in New Hampshire is not made conditional upon the existence of a policy of liability insurance. It is provided, however, that when an accident has happened a court at the insistence of a plaintiff injured in such accident may conduct a preliminary inquiry and if the plaintiff appears

to have a good case the court may require that a certificate of the existence of a proper liability insurance policy be filed or else that security for the payment of the damages be furnished, and if such order is not complied with the registration of the automobile in New Hampshire and the license to operate it in New Hampshire shall be suspended. The statute defines precisely what is meant by a 'motor vehicle liability policy,' the existence of which when shown by certificate prevents the suspension of the registration and the license to operate. The statute provides that 'A motor vehicle liability policy shall be subject to the following provisions, which need not be contained therein: . . . III. No statement made by the insured or on his behalf, and no violation of the terms of the policy, shall operate to defeat or avoid the policy so as to bar recovery within the limit provided in the policy.' The statute also provides that 'No motor vehicle liability policy, as defined in section 1, shall be issued or delivered in the state until a copy of the form of the policy has been on file with the commissioner of insurance for at least thirty days, unless, before the expiration of said period, the commissioner shall have approved the form of the policy in writing, nor if the commissioner notifies the company in writing that, in his opinion, the form of said policy does not comply with the laws of the state, provided he shall notify the company in writing within said period of his approval or disapproval thereof. The commissioner shall approve a form of policy which contains the name, address and business of the insured, a description of the motor vehicle and/or trailers covered, with the premium charges therefor, the policy period, the limits of liability, and an agreement that insurance is provided in accordance with and subject to the provisions of this act.' This case turns upon the question whether the conditions hereinbefore mentioned which were broken by Millard H. Bennett and Samuel T. Bennett were 'at variance with any specific statutory provisions in force' in the state of New Hampshire, because if they were 'such specific statutory provisions shall supersede' any conditions inconsistent therewith. If the provisions of the

New Hampshire statute are to be construed as establishing the policy of that state that no motor vehicle liability policy shall exist except such as is provided for by that statute, with a provision therein that no violation of the terms of the policy shall operate to defeat it, then it may be that the statute makes specific statutory provisions at variance with the terms of the policy in question so that the statutory provisions supersede the conditions of the policy. In that view the policy is to be read, so far as it applies to New Hampshire accidents, as though it contained a provision that no violation of the terms of the policy shall bar recovery. But it seems to me that this is not the true construction of the New Hampshire statute. The statute does not prohibit the operation of an automobile in New Hampshire not covered by a liability policy. It does not appear to prohibit the making in New Hampshire of a different form of liability policy. The statute simply provides that when an accident has happened in New Hampshire causing injuries to a plaintiff who appears to have a good case, the policy of liability insurance to be effective in avoiding the suspension of registration and license must be the exact sort of policy provided by the statute."

Other material facts found by the judge are stated in the opinion. By his order, a final decree dismissing the bill was entered in each suit. The plaintiffs appealed.

The cases were submitted on briefs.

*J. P. Kirby & E. S. Searle*, for the plaintiffs.

*E. W. Sawyer & R. S. Spooner*, for the defendant Liberty Mutual Insurance Company.

PIERCE, J. These three suits in equity were brought under G. L. (Ter. Ed.) c. 175, §§ 112, 113, and under G. L. (Ter. Ed.) c. 214, § 3 (10). The cases are before this court on appeals from a final decree in each case dismissing the plaintiffs' bill of complaint.

The oral evidence at the hearing was taken stenographically but is not here made a part of the record. In such a case the findings of fact by the trial judge are final unless they are necessarily inconsistent with the general findings.

*Columbian Insecticide Co. of Boston* v. *Driscoll*, 271 Mass. 74, 77, and cases cited.

It is alleged in the bills of complaint, and found by the trial judge, that on June 22, 1929, one Samuel T. Bennett, a resident of Springfield, Massachusetts, was the owner of a sedan automobile and as such was the holder of a policy of liability insurance numbered 993994 in the Liberty Mutual Insurance Company. This policy was issued in Massachusetts and expired on January 1, 1930. On June 22, 1929, one Millard H. Bennett, a resident of said Springfield and the minor son of said Samuel T. Bennett, was legally operating said automobile in the State of New Hampshire with the permission of his father. The plaintiffs were riding as guest passengers. An accident happened upon a highway in the town of South Newbury in the State of New Hampshire through the alleged negligence of Millard H. Bennett, and each of the plaintiffs received severe bodily injuries. The plaintiffs waited before bringing suits at law against Millard H. Bennett until he became of full age on February 4, 1930. The writs were dated May 6, 1930, and were returnable in the Superior Court on the first Monday of June, 1930. The Liberty Mutual Insurance Company, though duly notified of the actions, refused to undertake the defence of them. The defendant Millard H. Bennett did not appear and was defaulted in the several actions. On January 3, 1931, damages were assessed in each case by a jury and judgments were rendered on the first Monday of February, 1931, for the plaintiffs, the judgment for the plaintiff Muriel Sheldon being in the sum of $500.25 damages and $20.10 costs, the judgment of the plaintiff Doris E. Bennett being in the sum of $7,503.75 damages and $10.90 costs, and the judgment for the plaintiff Gordon Davin being in the sum of $100.05 damages and $10.90 costs.

Thereafter, by writs dated September 18, 1931, the present equity suits were instituted against said Millard H. Bennett and the Liberty Mutual Insurance Company under G. L. (Ter. Ed.) c. 214, § 3 (10), to compel the Liberty Mutual Insurance Company to pay the judgments. The answer of the defendant Liberty Mutual Insurance Company as

amended denies compliance with the conditions of the policy contract relating to (1) notice of the accident, (2) notice of claims, and (3) coöperation with the insurance company in investigating and handling the resulting claims.

The policy contract is primarily the contract required by the Massachusetts compulsory insurance law. The policy is indorsed to provide indemnity against claims and suits arising as the result of accidental injuries alleged to be due to the use of the automobile described in the policy issued to Samuel T. Bennett elsewhere than upon the ways of Massachusetts. As the indemnity provided by the indorsement contained on page 4 of the policy was not legally compulsory, the indorsement purported to state the conditions under which such extraterritorial indemnity would be provided. By the indorsement such extraterritorial protection is made available not only to the assured but also to any person operating the said automobile with the permission of the named assured, subject to the conditions of the policy and indorsement. By the unambiguous language of the indorsement, the provisions of the policy, that no violation of the terms of the policy and no act or default of the assured should operate to defeat or avoid the policy so as to bar recovery by a judgment creditor, were made inapplicable to the protection provided by the indorsement, and the "General Conditions" of the policy, "C," relating to notice to the insurer, and "D," relating to coöperation with the insurer, were applicable.

The trial judge rightly ruled that the rights of the judgment creditor under the extraterritorial protection afforded by the policy were no greater than the rights of the assured unless some other provision of the policy affects that general principle, citing *Cogliano* v. *Ferguson*, 245 Mass. 364. He found that all the conditions and facts which under the terms of the policy must be satisfied and proved to enable the plaintiffs to obtain the relief which they seek have been satisfied and proved except as may hereinafter appear. The coverage of the policy is extended to persons legally operating the automobile with the permission of the assured "in the same manner and under the same conditions" ap-

plicable to the assured. The material conditions referred to by the trial judge are: "Upon the occurrence of death or personal injuries or any accident covered by this Policy, the Assured shall as soon as practicable after learning thereof, give written notice with full particulars to the Company or its duly authorized Agent. The Assured shall give like notice of any claim made on account of any such occurrence." Another condition is that the assured "shall at all times render to the Company all co-operation and assistance in the Assured's power."

The facts material to the issue whether the assured violated the conditions of the policy are found by the trial judge to be in substance as follows: The accident happened on June 22, 1929. Both Samuel T. Bennett and Millard H. Bennett knew of the accident practically as soon as it happened. Millard H. Bennett never gave any written notice to the defendant company; if Samuel T. Bennett sent any written notice to the company, no such notice was ever received at least until after November 12, 1929. The judge finds that a notice as late as that was not as soon as practicable, citing *Clements* v. *Preferred Accident Ins. Co. of New York*, 41 Fed. Rep. (2d) 470; 76 Am. L. R. 17, and note. He ruled rightly that a proper construction of the policy required the notice to be received as well as sent, and cited *Schneider* v. *Boston Elevated Railway*, 259 Mass. 564. He found that both Millard H. Bennett and Samuel T. Bennett knew two or three months after the accident that the several plaintiffs intended to bring actions against Millard H. Bennett for damages, in the hope of collecting such damages from the Liberty Mutual Insurance Company; that they knew counsel had been consulted and had decided to wait until Millard H. Bennett became of full age before bringing actions; and that neither Millard H. Bennett nor Samuel T. Bennett ever communicated this information to the Liberty Mutual Insurance Company or to its agents prior to the bringing of the actions; that Millard H. Bennett and Samuel T. Bennett had reason to believe that the Liberty Mutual Insurance Company was not making the customary investigation of the accident and the inju-

ries, and had reason to believe that this was occasioned by a failure to receive actual notice of the accident and of the injuries, and yet neither took any steps to bring the matter to the attention of the Liberty Mutual Insurance Company in order to cause such an investigation to be made. On the above facts the trial judge found as a conclusion of fact that there was a breach of the foregoing conditions of the policy on the part of Samuel T. Bennett, and, if Millard H. Bennett by the terms of the policy was bound personally to perform the same conditions, then there was a breach of said conditions by Millard H. Bennett.

It is plain on the facts found that only a judgment creditor of the assured or of some person claiming by, through or under him the protection of the policy, could have the benefits of the policy. The plaintiffs, while denying that either Samuel T. Bennett, the assured, or Millard H. Bennett, the operator, failed in any particular to comply with "General Conditions" "C" and "D" of the policy, contend that these conditions are immaterial because N. H. St. 1927, c. 54, became a part of the policy by virtue of extraterritorial coverage indorsement which reads as follows: "SPECIAL STATUTES. If any of the Agreements, Conditions or Declarations of this endorsement are at variance with any specific statutory provisions in force in any State, Territory, District or Province within which coverage is granted, such specific statutory provisions shall supersede any such Agreement, Condition or Declaration of this endorsement inconsistent therewith." They further contend that the provisions of the indorsement which render nugatory those provisions in the Massachusetts Standard Policy as to notice of accident or claim as to the persons covered and coöperation are cancelled by the clause last above quoted, because under N. H. St. 1927, c. 54, the liability of the company to pay a judgment creditor became absolutely fixed upon the happening of an accident, and is in no way affected by the failure on the part of the assured or person covered to do any act or comply with any condition required by the policy. The plaintiffs rely upon the provisions of N. H. St. 1927, c. 54, § 6 (I), which

reads: "Upon the recovery of a final judgment against any person for any loss or damage specified in this section, if the judgment debtor was, at the accrual of the cause of action, insured against liability therefor under a motor vehicle liability policy, the judgment creditor shall be entitled to have the insurance money applied to the satisfaction of the judgment. II. The policy, the written application therefor, if any, and any rider or indorsement, which shall not conflict with the provisions of this act, shall constitute the entire contract between the parties."

The defendant contends that the position of the plaintiffs is unsound because by N. H. St. 1927, c. 54, the right to operate a motor vehicle is not made to depend upon the existence of an automobile liability policy, and that the question of the existence of such an insurance policy first arises when a motorist has been involved in an accident and a court has conducted a preliminary inquiry at the request of a person injured, to determine whether the operator was probably at fault, and if the court shall so find, to "order the defendant to furnish forthwith such security as to the court shall seem proper."

The decision turns upon the answer to the question whether the conditions hereinbefore mentioned, which were broken by Millard H. Bennett and Samuel T. Bennett, were at variance with any specific statutory provisions in force in the State of New Hampshire, because if they were "such specific statutory provisions shall supersede" any conditions inconsistent therewith. As respects this question the plaintiffs contend that the company should be held to have intended to give the assured the same coverage in New Hampshire which he had in Massachusetts; that if the accident had happened in Massachusetts the company was obliged to pay any person when injured up to the limits of the policy, regardless of any default on the part of the assured. With hesitation we think the provisions of the New Hampshire statute are not to be construed as establishing the policy of that State that no motor vehicle liability policy shall exist except such as is provided by N. H. St. 1927, c. 54, with a provision that no violation

of the terms of the policy shall operate to defeat it. We think the provisions of N. H. St. 1927, c. 54, are applicable only to required or compulsory policies issued in that State, and the fact that the policy which Samuel T. Bennett had was compulsory in Massachusetts did not by the extra-territorial indorsement continue the policy as a required or compulsory policy in the State of New Hampshire. We do not think, as contended by the plaintiffs, that the assured under the policy was in exactly the same situation as if on his arrival in New Hampshire he had applied for and obtained a policy authorized by the statute.

*Decree affirmed.*